# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6210 | **DATE** | 9/17/2001 |
| **CASE TITLE** | CEDRICK BENDER vs. JOHN C. BATTLES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Petitioner's petition for writ of habeas corpus is hereby denied with prejudice. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 18 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 15 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | 01 SEP 17 PM 5:16 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CEDRICK BENDER, | ) |
| | ) |
| Petitioner, | ) |
| | ) No. 00 C 6210 |
| v. | ) Judge Ronald A. Guzman |
| | ) |
| JOHN C. BATTLES, Warden, | ) |
| Illinois River Correctional Center, | ) |
| | ) |
| Respondent. | ) |

SEP 1 8 2001

## MEMORANDUM OPINION AND ORDER

Before the Court is Cedrick Bender's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, Bender's petition is denied with prejudice.

## FACTS

The following facts are taken from the opinion of the Illinois Appellate Court. Petitioner has not challenged these facts, therefore this Court presumes those facts are correct. *Robinson v. Wilson*, No. 00 C 3598, 2001 U.S. Dist. LEXIS 3400 *at 2, (N.D. Ill. Mar. 14, 2001).

Frances Mauro ("Mauro") was the only witness to the carjacking, and her evidence was the state's principal evidence. Mauro testified at trial that on December 18, 1995 she went to a McDonald's restaurant. She drove her green 1995 Toyota Avalon into the drive-through lane and stopped next to the menu board. She rolled down her window and ordered coffee.



1

While Mauro's window was down a man aimed a gun inches from her face and ordered her to exit the vehicle. Due to the narrow space between Mauro's vehicle and the menu board, Mauro and her assailant faced one another as she exited the vehicle and he entered it. Mauro testified at trial that the space was so small that at one point her face was a mere four inches away from her assailant. The man sat down in her vehicle, and Mauro again saw his entire face when he turned toward her and demanded her purse. Mauro informed the man that her purse was behind the front seat and he slowly exited the McDonald's parking lot.

Police arrived at McDonald's shortly thereafter. Mauro described her assailant as 17 to 24 years of age, medium height, and "dark complected." Two officers drove Mauro around the neighborhood for 15 minutes in an effort to locate her vehicle.

Mauro later went to the police station to look at five photographs of possible suspects and identified Bender as the man who carjacked her that same morning. One December 21, 1995 Mauro again identified Bender as her assailant from a lineup at the police station.

Several police officers also testified for the state's case in chief. Officer James Hall ("Hall") was assigned to investigate the carjacking. Hall questioned McDonald's employees about the crime and subsequently asked Mauro to identify the assailant from the photograph array. Officer Hartman testified as to the circumstances surrounding Bender's arrest. Detective James Pubins testified to the lineup he conducted at the police station.

Officer Ronald Paige ("Paige") spoke with Mauro immediately following the carjacking. Paige testified at trial that Mauro described her assailant but could not describe the gun he wielded.

The defense also called several police officers in his case in chief. John Olson ("Olson") stopped a vehicle that was later identified as Mauro's stolen vehicle. Two African American

2

males were driving the car at the time Olson stopped it and were identified as Vincent Williams ("Williams") and James Saunders ("Saunders"). Olson testified that Williams was seated in the driver's seat and Saunders in the front passenger seat.

Saunders testified as part of the rebuttal. He testified that on December 19, 1995, about 7:15 a.m. Williams picked him up in a green 1995 Toyota Avalon. He had never seen the vehicle prior to that time. Williams drove the vehicle and Saunders sat in the passenger seat. The police stopped the two while they were driving to purchase some food.

Bender offered the stipulated testimony of Officer Thomas Mander ("Mander"), the police evidence technician. Mander procured six fingerprints and one palm print from Mauro's vehicle. The prints were obtained from a bottle of cologne, a cassette tape box, the driver's side window, the right rear door, the right rear window, the driver's side window and the right side post and window.

In addition, the defense called Officer Richard McGrath ("McGrath"). McGrath testified that the handprints found in Mauro's vehicle matched those of Williams and Saunders, not the defendant. The state then cross-examined McGrath regarding possible explanations why a person's handprints may not be found on particular surfaces. The defense objected to this line of questioning but the trial court overruled the objection.

## PROCEDURAL BACKGROUND

On January 8, 1996, following a bench trial in the Circuit Court of Cook County, Illinois, Petitioner Cedrick Bender ("Bender") was convicted of aggravated vehicular hijacking and vehicular hijacking. Bender was sentenced to 30 years of imprisonment. Bender appealed his conviction alleging: (1) he was prejudiced when the State allegedly violated the court's order prohibiting the elicitation of hearsay; (2) the State improperly suggested Bender possessed a

criminal history; (3) the court erred in denying Bender access to fingerprint evidence and not appointing him a fingerprint expert; (4) he was not proven guilty beyond a reasonable doubt; (5) he should have been allowed to present any eyewitness identification expert witness; and (6) Bender's sentence was based on improper aggravating factors. (Pet. Br. On Direct Appeal, Ex. A.) The Illinois appellate court affirmed Bender's conviction and sentence. (Ill. App. Ct. Order of June 30, 1999, Ex. D.) On August 4, 1999 Bender filed a petition for leave to appeal to the Illinois Supreme Court alleging that the appellate court erred in finding: (1) the trial court's limiting instruction remedied the introduction of hearsay statements; (2) the prosecution's repeated introduction of inadmissible evidence did not deprive Bender of a fair trial; (3) the prosecution did not characterize Bender as a criminal; (4) that Bender was properly denied access to potentially exculpatory fingerprint evidence and a court appointed fingerprint expert; (5) that the prosecution proved Bender guilty beyond a reasonable doubt; and (6) that Bender should not have been appointed an expert witness for eyewitness identification issues. (Pet. for Leave to Appeal, Ex. E.) The Illinois Supreme Court denied Bender's petition for leave to appeal on October 28, 1999. (Ill. Sup. Cut. Order of Oct. 28, 1999, Ex. F.)

On October 6, 2000, petitioner filed the instant Petition for Writ of Habeas Corpus ("Petition"), alleging that his Fifth, Sixth, and Fourteenth Amendment rights were violated when: (1) he was denied access to potentially exculpatory fingerprint evidence and a fingerprint expert; (2) the prosecutions repeatedly referred to excluded hearsay; (3) the prosecution depicted him as a criminal; and (4) he was denied access to an expert on the reliability of eyewitness testimony. (Pet. for writ of habeas corpus at 3-4.)

4

## DISCUSSION

### I. Procedural Default

Review of Bender's petition for writ of habeas corpus is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under amended § 2254 a petitioner must exhaust all remedies available in state court and avoid procedural default under Illinois law. *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). Claims are exhausted when the petitioner presents them to the highest state court for a ruling on the merits or when no means of review remain available. 28 U.S.C. § 2254(c); *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991). A procedural default occurs when (1) the petition fails to raise an issue on direct or post-conviction review; or (2) the state court has disposed of the claim on an independent and adequate state law basis. *See Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

The state does not contend that petitioner has failed to exhaust any of his claims. However, the state does argue that petitioner's second claim is procedurally defaulted because Bender did not raise the issue on direct or post-conviction review. The petitioner must raise his claim on direct or post-conviction review to provide the state courts with a fair opportunity to apply constitutional principals and correct constitutional errors. *U.S. ex. rel. Sullivan v. Fairman*, 731 F.2d 450, 453 (7th Cir. 1984). To determine whether petitioner has presented the claim to a state court, courts have considered whether the petitioner's argument: (1) relied on pertinent federal cases; (2) relied on state cases applying constitutional analysis to a similar factual situation; (3) asserted the claim in terms particular of a specific constitutional right; or (4) alleged a pattern of facts that is common in constitutional litigation. *Verdin v. O'Leary*, 972

F.2d 1467, 1473-74 (7th Cir. 1992). However, the Court must consider the facts in each case because the presence of any one of these factors does not automatically prove the claim is not procedurally defaulted. *Id.* at 1474.

Petitioner's second claim has been fairly presented to the state courts and therefore is not procedurally defaulted. Bender's second claim alleges that his Fifth, Sixth and Fourteenth Amendment rights were violated by the state's repeated references to excluded hearsay. (Pet. for writ of habeas corpus at 3.) Consistent with this argument, petitioner's Illinois Appellate Court brief states that "the [s]tate deprived Mr. Bender of his rights to confront witness and to receive due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments [of] the United States Constitution . . . by repeatedly emphasiz[ing] hearsay evidence that corroborated the only eyewitness testimony in the case." (Brief for Def. In Ill. App. Ct., Ex. A at 21.) Similarly, the Illinois Supreme Court brief states that the trial court deviated from federal constitutional law. (Petition for Leave to Appeal to the S. Ct. of Ill., Ex. F at 10-11.) Moreover, both briefs cite relevant state and federal law to support a constitutional claim. (Brief for Def. In Ill. App. Ct., Ex. A at 21.);(Petition for Leave to Appeal to the S. Ct. of Ill., Ex. F at 10-11.) Thus, the state courts had a fair opportunity to apply constitutional principals and correct constitutional errors and the Court rejects the state's argument that petitioner's second claim is procedurally defaulted.

## II. Merits

Although petitioner's claims are not procedurally defaulted, 28 U.S.C. § 2254 requires also the petitioner to demonstrate that the claim was adjudicated on the merits in state court and

(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal Law, as determined by the Supreme
Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "contrary to" clause pertains to questions of law which the court reviews *de novo*. *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999). The "unreasonable application" clause refers to mixed questions of law and fact, to which the court grants deference to reasonable state court decisions. *Schaff*, 190 F.3d at 522-23.

In §2254(d)(2), the "unreasonable determination of the facts" language relates to pure questions of fact. *Hall v. Washington*, 106 F.3d 742, 752 (7th Cir. 1997). In the court's review of factual questions, the state court's factual determinations are presumed to be correct unless petitioner can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Schaff*, 190 F.3d at 521.

Under §2254(d)(1) courts deciding habeas claims are no longer able to apply their own jurisprudence to determine whether the state courts' decisions were "contrary to, or involved an unreasonable application of, clearly established Federal Law." *Sweeney v. Parke*, 113 F.3d 716, 718 (7th Cir. 1997). Instead reviewing courts must apply Supreme Court precedent. *Sweeney*, 113 F.3d at 718. The Seventh Circuit's cases are dispositive however, when they conclude that a certain state court ruling is contrary to relevant Supreme Court decisions. *U.S. v. Page*, No. 97 C 1079, 2000 U.S. Dist. LEXIS 14540 at *14 (N.D. Ill. Sept. 29, 2000).

**1. Fingerprint Evidence and Expert Testimony**

Bender's first claim is that he was denied access to potentially exculpatory fingerprint evidence and a fingerprint expert in violation of his Fifth, Sixth, and Fourteenth Amendment rights. Bender was not allowed to examine the handprints found in Mauro's car that matched

7

those of Williams and Saunders. Defendant's counsel informed the trial court that he wanted to look at the prints to determine where they were procured, rather than conducting an independent comparison of the prints. Pursuant to *Brady v. Maryland*, defendant claims that he had a right to this potentially exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83, 86 (1963). The trial court and the court of appeals found that the nondisclosure of the handprint evidence did not violate *Brady* because the jury was informed that Bender's prints were not found in the vehicle, and that Williams' and Saunders' prints were found in Mauro's vehicle.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the prosecution has an affirmative duty to provide criminal defendants exculpatory evidence that is both favorable and "material either to guilt or punishment." *Moore v. Illinois*, 408 U.S. 786, 794-795 (1972). A new trial is required if the suppressed evidence could "in any reasonable likelihood have affected the judgment of the jury . . ." *Giglio v. U.S.*, 405 U.S. 150, 154 (1972) (finding new trial required when evidence effects the credibility of witness testimony which there would be no indictment or jury trial without) citing *Napue v. Illinois*, 360 U.S. 264, 271 (1959).

In the instant case although petitioner was denied access to the fingerprint evidence, the jury was informed that Bender's prints were not found in the vehicle, and that Williams' and Saunders' prints were found in Mauro's vehicle. Thus, there is very little likelihood that providing petitioner with the fingerprint evidence would have affected the outcome of the trial when the jury was informed of the evidence that would strengthen petitioner's case. Therefore, the Court finds no constitutional violations in the non-disclosure of the fingerprint evidence by the trial court.

Moreover, petitioner claims that the denial of a fingerprint expert also violated his Fifth, Sixth, and Fourteenth Amendment rights. The trial court denied Bender's motion to have a

fingerprint expert appointed. The Illinois Court of Appeals affirmed this decision finding that a fingerprint expert was not necessary for Bender to prove a critical issue in the case. (Ill. App. Ct. Order of June 30, 1999, Ex. D p. 14.)

The Supreme Court has found "a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense." *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985). (holding indigent defendant's right to a fair trial requires psychiatric evaluation and assistance when defendant's mental condition is a significant issue at trial). In the instant case, the jury was informed that Bender's prints were not found in the vehicle, and that Williams' and Saunders' prints were found in the victims, Mauro's, vehicle. Petitioner questioned Officer McGrath regarding whose prints were found in the vehicle and the locations in the car from where the prints were procured. On cross-examination the state elicited testimony from Officer McGrath regarding how someone could be in a vehicle but not leave handprints. Any additional information that could be gleaned from a fingerprint expert would not be integral to petitioner's defense. Thus, the trial court's denial of funds to appoint a fingerprint expert does not warrant habeas corpus relief.

### 2. Prosecutions References to Excluded Hearsay

Petitioner next claims that the state's repeated references to excluded hearsay violated his Fifth, Sixth and Fourteenth Amendment rights. The trial court granted Bender's *motion in limine* to bar all references of conversations between McDonald's employees and police, which implicated the petitioner. (Ill. App. Ct. Order of June 30, 1999, Ex. D pp. 4-10.) During the course of the trial, petitioner claims the state had violated the court's order on four occasions.

*Id.* at 5. The first alleged violation occurred during opening statements. Defendant did not make a timely objection to this first statement. The second instance was articulated by Mauro when she testified that "the manager of McDonald's came out and said he knew who [the assailant] was." *Id.* at 5. The defendant made a timely objection to this statement and to the following other statements. Petitioner claims that the third alleged violation occurred from the following question directed toward Officer Hall: "After speaking with employees at the McDonald's what did you do?" *Id.* at 5-6. To which Officer Hall replied, "We developed information and a name, and we went and obtained photographs." *Id.* at 6. Finally, petitioner claims the state's closing argument was in violation of the court order when the prosecution stated:

> [ASSISTANT STATE'S ATTORNEY]: He's the beat officer, he -- after he gets the case, it gets assigned to the detectives to do the follow-up, to continue the reports, so they can do the lineups, so they can do the photo arrays.
> So he did what his job was, to try to catch the crime [sic] immediately after it happened. And he did his best, but unfortunately, they weren't able to find the car. Next thing you learn is that there is a name under it. Name of Cedric [sic] Bender. This defendant. His name is generated after conversations with people at McDonald's.

(Ill. App. Ct. Order of June 30, 1999, Ex. D pp. 6-7.) Both the trial court and the court of appeals found that these statements constituted inadmissible hearsay. *Id.* at 9. However the appellate court found that any prejudice to defendant was cured when the judge immediately sustained defendant's objections and issued limiting instructions to the jury. *Id.* at 9.

To warrant habeas corpus relief, the prosecutor's actions must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainright*, 477 U.S. 168, 181 (1986) citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Factor's to be considered by the habeas court to determine whether the prosecutor's conduct created a denial of due process include: (1) whether the prosecutor manipulated or misstated evidence; (2) whether the prosecutor's statements implicated specific rights of the

accused; (3) whether the prosecutor's comments were invited by the defense; (4) the weight of the evidence against the defendant; and (5) whether any curative instructions were issued by the trial court. *Id.* at 181-83. The trial court sustained defense objections to the improper comments and instructed the jurors not to consider the statements. The Court must presume that the jury understood and followed the curative instruction. *Greer v. Miller*, 483 U.S. 756, 766 (1987). Moreover, the comments were not so egregious as to render the trial fundamentally unfair. *Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986) (finding prosecutions comments including: defendant was an animal, the victim should have blown defendant's face off with a shotgun and defendant should kill himself did not necessitate a new trial.)

Nor did the comments violate the Sixth Amendment, which affords defendants in criminal prosecutions the right to confront all witnesses against him. U.S. Const. Amend VI. The confrontation clause was designed to assure that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement." *California v. Green*, 399 U.S. 149, 161 (1970). In this case the trial court agreed that the statements were hearsay sustained defense objections to the improper comments and instructed the jurors not to consider the statements. Courts must presume that the jury understood and followed the curative instruction. *Greer v. Miller*, 483 U.S. 756, 766 (1987). Thus, it was not unreasonable for the trial and appellate courts to find no constitutional error.

Assuming arguendo that the prosecution's mistake was constitutional error, the error does not warrant habeas relief as it was a harmless error. A constitutional error is considered harmless unless the habeas petitioner can establish that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Petitioner has not shown that the hearsay statements had an injurious effect on him or

influenced the jury's verdict. The trial court sustained defenses objections and instructed the jury to disregard the hearsay statements. Moreover, the state had an eyewitness, Mauro, who positively identified Bender from a police line-up and photo array. Thus any constitutional error attributable to the hearsay statements was harmless. Accordingly, this court cannot find it was unreasonable for the trial court and the appellate courts' to find that the prosecutions comments did not violate petitioner's Fifth, Sixth, and Fourteenth Amendment rights.

### 3. Evidence of Criminal Propensity, Mug Shots, and "Other Names"

Petitioner argues that the state depicted Bender as a criminal in violation of his Fifth and Fourteenth Amendment rights. The first example petitioner proffers is when Officer Hartman testified that he "might have arrested" the petitioner prior to the victim's carjacking. The trial court sustained defense counsel's objection, instructed the jury to disregard the statement and informed the jury that the statement did not prove that defendant had any prior arrests. (Ill. App. Ct. Order of June 30, 1999, Ex. D p. 10.) Because this court presumes that the jury understood and followed the curative instruction, it was not unreasonable for the trial and appellate courts to find the petitioner's claim of constitutional error without merit. *See Greer v. Miller*, 483 U.S. 756, 766 (1987).

In the following examples however, the trial court did not sustain defense objections and allowed the evidence. The first instance was in a *motion in limine* defendant requested that the portion of the photographs that made them look like mug shots be redacted. Because the prosecution wanted the dates to be left on the pictures, the trial court instructed the attorney's to collaborate on a solution without cutting the photographs. The following day defense counsel objected that the photographs still looked like mug shots and suggest defendant had a criminal

background. The trial court and court of appeals found no error in the admission of the photographs because they defendant had an opportunity to assist in the manner they were redacted. *Id.* at 11.

Secondly, petitioner contests the prosecution's introduction of testimony alleging "other names" he gave the police. The prosecution elicited testimony that petitioner responded to the police when they called him other names and mentioned that petitioner lied when police approached him. The Illinois Court of Appeals affirmed the trial court's holding finding "the State did not argue or even suggest that defendant uses aliases." *Id.* at 11.

The admissibility of evidence is generally a matter of state law and is only subject to federal habeas review if the petitioner can show that the erroneous evidentiary ruling violated his right to a fundamentally fair trial under the due process clause. *Howard v. O'Sullivan*, 185 F.3d 721, 723-24 (7th Cir. 1999). To be fundamentally unfair, "the error must have produced a significant likelihood that an innocent person has been convicted." *Id.* at 724. The Court must also consider "the rights of criminal defendants under the sixth and fourteenth amendments to present evidence in their own defense and the state's 'sovereign prerogative' to regulate the presentation of evidence in its courts." *Cunningham v. Peters*, 941 F.2d 535, 538 (7th Cir. 1991). The photographs and testimony were relevant and material to the issue of identification. Moreover, the appellate court found that the trial court's decision supported by Illinois law. (Ill. App. Ct. Order of June 30, 1999, Ex. D pp. 10-13.) Furthermore, the trial court gave Bender an opportunity to assist in the redaction of the photographs to make them look less like mug shots. Thus, the evidentiary ruling of the trial court to admit the photographs and testimony is not a proper basis for habeas corpus relief.

### 4. Expert Witness on Reliability of Witness Testimony

In Bender's final claim, he argues that his rights under the Sixth and Fourteenth Amendments were violated when he was denied access to an expert to testify on the reliability of the eyewitness testimony. Bender's conviction in this case was aided by the eyewitness testimony of Mauro, the victim of the carjacking. Petitioner sought to introduce expert testimony that would explain specific factors that may affect eyewitness identification. These factors include the tendency of the victim to focus on the weapon rather than the assailant and a difficulty identifying persons of another race. After an extensive hearing on the issue, the trial court denied Bender's request, finding that the expert's knowledge of eyewitness reliability was not beyond that of the average layperson and would have encroached on the jury's duty to make factual determinations and to assess the credibility of the witness. (Ill. App. Ct. Order of June 30, 1999, Ex. D pp. 17-18.) The Illinois Court of Appeals affirmed the trial court's ruling noting that the trial court has broad discretion to determine the admissibility of expert witness testimony. *Id.* at 18.

As mentioned above, the admissibility of evidence is generally a matter of state law and is only subject to federal habeas review if the petitioner can show that the erroneous evidentiary ruling violated his right to a fundamentally fair trial under the due process clause. *Howard v. O'Sullivan*, 185 F.3d 721, 723-24 (7th Cir. 1999). The appellate court noted that Bender cross-examined Mauro regarding whether she focused on the gun and whether she had problems identifying persons of another race. (Ill. App. Ct. Order of June 30, 1999, Ex. D p. 18.) Thus the testimony was not relevant or material to the issue of identification when it would merely reiterate what was set forth on cross-examination. Moreover, denying petitioner the use of an expert witness on the reliablity of witness testimony is consistent with Illinois state law. *People*

*v. Wilson*, 246 Ill. App. 3d 311, 320, 615 N.E.2d 1283, 1288 (4th Dist. 1993) (holding that the expert's testimony would have provided the jury with little, if any, information beyond the knowledge of an average layperson, and would have impinged on the province of the jury to determine credibility and assess the facts of the case). Thus, the evidentiary ruling of the trial court to exclude expert testimony regarding the witness's reliability does not warrant habeas corpus relief.

## CONCLUSION

For the foregoing reasons petitioner's petition for writ of habeas corpus is hereby denied with prejudice. (#1-1) This is a final and appealable order.

SO ORDERED 9/17/01

Judge Ronald A. Guzman
United States Judge